***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby modifies the Opinion and Award of the Deputy Commissioner.
The Full Commission makes the following Findings of Fact which the parties entered into as:
 STIPULATIONS
1. The parties are subject to the jurisdiction of the North Carolina Industrial Commission.
2. The employee-employer relationship existed between the Plaintiff-Employee and Defendant-Employer on or about November 21, 1996.
3. Tyson Foods is a duly qualified self-insured.
4. Defendant accepted Plaintiff's claim for bilateral carpal tunnel syndrome as compensable but denied that Plaintiff's alleged bilateral shoulder condition was compensable.
 ***********
Based upon the evidence presented at the hearing and the depositions, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was 48 years old on the date of the deputy commissioner hearing; she has an 11th grade education.
2. Between 1992 and 1998, Plaintiff was employed by Defendant-Employer.
3. On November 21, 1996, Plaintiff reported to Defendant-Employer an injury to her hands and shoulders. At that time she had been performing the "wingette cutter" job for approximately 3 years.
4. On or about November 21, 1996, Defendant-Employer prepared an IC Form 19, which was not sent to the Commission until July 1998.
5. Defendant's witness described the wingette cutter position as requiring feeding wingettes into slots in a Star Wheel Machine, revolving in front of the worker. The employee would feed between 50 and 60 pieces per minute and up to 28,800 pieces per eight hour day.
6. Defendant arranged for Plaintiff to be seen on November 20, 1996 by doctors at Carolina Bone and Joint — initially Dr. Millon. Plaintiff was diagnosed with moderate right shoulder impingement syndrome, for which Plaintiff received an injection treatment. Dr. Millon also diagnosed Plaintiff with left sided carpal tunnel syndrome. She was instructed to wear a wrist splint on her left hand and was restricted to jobs that would reduce repetitive flexion and extension of her digits. Plaintiff was also restricted to a ten pound lifting limit.
7. Plaintiff continued to be treated by doctors at Carolina Bone 
Joint. On December 18, 1996, Plaintiff reported to the doctor that she had long lasting relief after the shoulder injection on November 20, 1996, but that she did have a slight recurrence of pain the day before in her neck area. Dr. Millon reported that Plaintiff's symptoms resolved and that she could return to full duty work.
8. Plaintiff returned to Dr. Millon on January 22, 1997 complaining of swelling and pain in her right hand which she related to using scissors at work. The doctor diagnosed Plaintiff as having recurring bilateral carpal tunnel syndrome, right greater than left, and released her to work without the use of scissors and rotating jobs. He also recommended that she wear wrist splints.
9. At Dr. Millon's direction, Plaintiff returned to see him on March 5, 1997. She reported that her pain was better, but packing exacerbated her pain. Dr. Millon restricted Plaintiff from no packing for six weeks.
10. On December 4, 1997, Plaintiff saw Dr. King, a colleague of Dr. Millon at Carolina Bone Joint. Dr. King eventually became Plaintiff's treating physician. Dr. King reported that Plaintiff was having continued problems with her hands and that the hand seemed to be "a long term problem." He injected her left shoulder, ordered a Nerve Conduction Study, and prescribed her Vicodin.
11. On January 13, 1998 Defendant denied authorization for the Nerve Conduction Study, ordered by Dr. King on December 4, 1997.
12. The Nerve Conduction Study, performed January 19, 1998, revealed bilateral carpal tunnel syndrome. Defendant approved the study under workers' compensation on January 29, 1998. Dr. King recommended surgery based on the NCS results.
13. Plaintiff had bilateral carpal tunnel release surgery on January 30, 1998.
14. Plaintiff could not work as a result of her bilateral carpal tunnel syndrome from January 13, 1998 through March 9, 1998 and from March 31, 1998 through May 12, 1998. Plaintiff took a medical leave of absence and received employer funded short-term disability benefits during these time periods.
15. Defendants admit that the bilateral carpel tunnel syndrome was a result of Plaintiff's employment and have agreed to pay Plaintiff the difference between what she would have received as temporary total disability benefits and what she received as short term disability benefits previously paid to her.
16. As of January 13, 1998, Plaintiff made $7.90 per hour or $316 per week which yields a compensation rate of $210.67 per week.
17. Plaintiff attempted to return to work on May 13, 1998, however, only lasted two hours before her hands ached to the point where plaintiff felt dizzy, was sweaty, and sick to her stomach. Plaintiff reported to defendant's medical department and was informed by Ms. Edwards that there was no job with defendant that plaintiff could do, that plaintiff should file for Social Security disability, and to return when she felt better. Plaintiff did not feel better and did not return to defendant. Defendant was not treating plaintiff's claim as a workers' compensation claim and did not provide continuing medical care directed at returning plaintiff to work.
18. Plaintiff returned to work on May 13, 1998, however, plaintiff was not able to physically perform the work available with defendant. The greater weight of the credible evidence is that defendant did not offer suitable employment to plaintiff and thereby plaintiff did not refuse suitable employment.
19. Dr. King evaluated Plaintiff on November 19, 1998, for complaints of right shoulder pain. This is the first time Plaintiff had complained of right shoulder pain in two years. Moreover, Plaintiff had not worked, at least for Tyson Foods, in more than six months. After examining Plaintiff's right shoulder, Dr. King administered a Kenalog injection and released her to return as needed.
20. Plaintiff did not seek medical treatment again until February 19, 1999. On that date, she returned to Dr. King reporting that mopping was causing left shoulder and left hand palm pain.
21. On June 2, 1999, Plaintiff told Dr. King that her work at church was increasing her hand symptoms. After examining Plaintiff, Dr. King gave his opinion that her reported symptoms did not warrant further treatment. He reiterated that Plaintiff had reached maximum medical improvement, but assigned a five percent permanent partial disability rating to her right hand.
22. Plaintiff was seen by Lois Osier, M.D., at Charlotte Orthopaedic Specialists, on July 15, 1999, for a second opinion evaluation of her bilateral carpal tunnel syndrome. Dr. Osier concluded that Plaintiff could return to work so long as it did not involve moderate or heavy lifting or gripping activities. She also indicated that Plaintiff was at maximum medical improvement with a permanent partial disability rating of five percent to both hands.
23. Plaintiff returned to Dr. King on December 8, 1999, with right wrist swelling after injuring her wrist while lifting a gallon of milk. Plaintiff also complained of right shoulder pain. Dr. King diagnosed right shoulder impingement, right wrist strain, and bilateral carpal tunnel syndrome. He administered another right shoulder steroid injection and released her to return as needed.
24. Plaintiff did not seek any medical treatment for her hands or shoulders for more than one and one-half years as she did not return to Dr. King until June 1, 2001.
25. Based on the greater weight of the competent evidence, plaintiff's compensable bilateral carpal tunnel syndrome continued after she left work on May 13, 1998, and is continuing. Although plaintiff has sustained aggravations to her carpal tunnel condition, the reported incidents are natural consequences of the compensable injury and are not an independent, intervening event attributable to plaintiff's intentional conduct.
26. Plaintiff underwent a left shoulder MRI on August 10, 2001. The diagnostic impression was that Plaintiff presented with a tear of the anterior portion of the left rotator cuff with no retraction. The interpreting clinician gave his impression that this finding was consistent with impingement syndrome. Dr. Osier testified that most people over the age of 40 show signs of rotator cuff tear.
27. Plaintiff has a history of diffuse upper extremity complaints predating her employment with Defendant-Employer and continuing subsequent to her employment with Defendant-Employer. Plaintiff did not present any expert medical testimony that her bilateral shoulder condition was causally related to her employment with Defendant-Employer. Plaintiff's complaints of bilateral shoulder pain are not causally related to her employment with Defendant-Employer.
28. Plaintiff has sustained a compensable injury consisting of bilateral carpal tunnel syndrome. Defendant has accepted the compensability of plaintiff's bilateral carpal tunnel syndrome. Plaintiff was disabled and not able to return to employment with defendant and continued to be disabled as of the date of her unsuccessful attempt to return to work on May 13, 1998. Defendant has not presented evidence to establish that plaintiff's disability is not or has not been continuing. The limited medical care provided to plaintiff after May 13, 1998, is related to defendant's failure to acknowledge plaintiff's condition as a workers' compensation claim and to provide medical care as required by the Act.
 ***********
Based upon the foregoing, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to temporary total disability compensation at the rate of $210.67 per week on account of her accepted bilateral carpal tunnel syndrome from January 13, 1998 through March 9, 1998, from March 31, 1998 through May 12, 1998, and from May 14, 1998 and continuing until plaintiff returns to work or further order of the Commission, less a credit owed to Defendants for payment of short-term disability benefits. N.C.G.S. §§ 97-53 (13), 97-29.
2. Plaintiff has reached maximum medical improvement and has a 5% impairment rating to each hand and would be entitled to benefits under § 97-31. Plaintiff continues to be disabled and is presumed to accept the greater benefits allowed under § 97-29 than the benefits provided under § 97-31. Gumpton v. Builders Transport, 320 N.C. 38,357 S.E.2d 674 (9187); Wilder v. Barbour Boat Works, 84 N.C. App. 188,352 S.E.2d 690 (1987).
3. Plaintiff is entitled to payment of her medical treatment for her bilateral carpal tunnel syndrome by the Defendants. N.C.G.S. §§ 97-25,97-53(13).
4. Plaintiff has failed to establish a compensable injury to her shoulders. N.C.G.S. §§ 97-2(6), 97-53(13).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to Plaintiff temporary total disability compensation of $210.67 per week from January 13, 1998 through March 9, 1998, from March 31, 1998 through May 12, 1998, and from May 14, 1998 until plaintiff returns to work or further order from the Commission, less credit owed to the Defendants for payment of short-term disability benefits paid to Plaintiff. Those benefits which have accrued shall be paid to Plaintiff in a lump sum subject to an attorney fee, awarded below. Continuing benefits shall be paid weekly, subject to the attorney's fees awarded, below.
2. Plaintiff's counsel is entitled to a 25% attorney's fee on the lump sum payment for past benefits owed to Plaintiff after credit is given to the Defendants for short term disability benefits that were paid. Defendant shall withhold this sum from the amount payable to plaintiff in Paragraph 1, above, and pay this sum directly to plaintiff's counsel. Defendant shall pay every fourth continuing weekly benefit to plaintiff's counsel.
3. Defendants shall pay for all medical treatment for Plaintiff's admitted carpal tunnel syndrome.
4. Defendants shall pay the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER